Arthur I. Jacobs Nassau County Attorney Fernandina Beach
QUESTION:
Has a county ordinance which was enacted to amend a special act regulating the size of nets to be used for fishing `in any of the salt waters of Nassau County' been expressly or impliedly repealed by general law?
SUMMARY:
A noncharter county possesses no home rule power under s. 6(d), Art. VIII, State Const., to amend a special act antedating the 1968 revision of the constitution regulating the taking of saltwater fish `in any of the salt waters of the county' when a municipality in the county includes salt water within its corporate limits. Under such circumstances, the special act does not relate only to the unincorporated area of the county, and the county possesses no constitutional home rule power to amend or repeal such special act. Under ss. 370.102 and 125.01(4), F. S., the power to regulate the taking or possession of saltwater fish is expressly reserved to the state. Thus, these statutes operate to prohibit a noncharter county from enacting ordinances for the purpose of regulating such actions, and also operate to repeal or supersede any such existing ordinances.
Your letter advises that the board of county commissioners of Nassau County enacted an ordinance, the purpose of which was to amend. Ch. 19993, 1939, Laws of Florida. As enacted by the Legislature, this special act provided in part:
 It shall be unlawful for any person, persons, firm or corporation to catch any fish in any of the salt waters of Nassau County, Florida, with any seine, gill-net, pocket-net or any other kind of net of less size than one and one-half inch bar measured from knot to knot or a stretched mesh of three inches from knot to knot after being tarred or shrunk. (Emphasis supplied.)
Chapter 19993 also provides for a different measure of net to be used for the taking of mullet.
The county ordinance under discussion purported to amend Ch. 19993, to state that it shall be unlawful to use a net `of less size than one-quarter (1/4) inch bar measured from knot to knot or a stretched mesh of two and one-half (2 1/2) inches from knot to knot after being tarred and shrunk.' (Emphasis supplied.) In addition, the ordinance deleted the section providing for a different measure of net to be used for mullet, and added a requirement that no net will exceed 150 feet. The county ordinance also provides that `persons using seines or other fishing devices shall not interfere one with the other, or harass each other in catching fish along the beaches and shall not leave on the beaches and [sic] marine life or refuse.' This clause which purports to regulate the conduct of fishermen as opposed to the taking of saltwater fish is not on the same subject as Ch. 19993, and does not appear to have been intended as an amendment or modification of same. Thus, no opinion is expressed as to its validity.
Although your letter requests this office to opine as to the `continued validity' (Emphasis supplied.) of the county ordinance in question, your inquiry initially requires a determination as to whether the county ever possessed the authority to amend the special act. Section 1(f), Art. VIII, State Const., provides:
 Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law . . . .
Section 6(d), Art. VIII, State Const., reads:
 Local laws relating only to unincorporated areas of a county
on the effective date of this article may be amended or repealed by county ordinance. (Emphasis supplied.)
See, also s. 12(g), Art. X, State Const., in which `special law' is defined to mean `a special or local law'; and Davis v. Gronemeyer, 251 So.2d 1 (Fla. 1971), in which the court stated that `at least one definition of a local law is a special law; that is, a special act of the Legislature.'
Thus, Nassau County, as a noncharter county, possesses only such home rule power as is provided by general or special law, or to the limited extent provided under s. 6(d), Art. VIII, State Const. Davis v. Gronemeyer, supra; State ex rel. Volusia County v. Dickinson, 269 So.2d 9, 11 (Fla. 1972); AGO 069-99; see also AGO's 077-38, 076-20. With regard to the instant inquiry, s. 125.01(4), F. S., operates to deprive the county of any home rule power under s. 125.01, F. S., to regulate the taking of saltwater fish, and Ch. 19993, supra, does not purport to grant any such home rule power to the county. As for s. 6(d), Art. VIII, supra, that constitutional provision permits a noncharter county to amend or repeal only those special or local laws which are solely applicable to the unincorporated areas of the county. See AGO's 069-99, 071-146, 073-462. Cf. AGO's 072-102, 071-154, stating that special laws which establish autonomous statutory entities or special districts may not be amended or repealed by county ordinance. Thus, a special law which is applicable throughout the county or which `pertains to — and is potentially applicable to — the incorporated areas as well as the unincorporated areas thereof' may not be amended or repealed by the county. Attorney General Opinion 070-55.
With respect to the instant case, you have advised this office that at least one municipality in Nassau County includes salt waters within its corporate boundaries. The body or enabling terms of Ch. 19993, as well as the title thereof, states that the act relates to the taking of fish `in any of the salt waters of Nassau County.' Thus, the special law clearly relates to incorporated as well as unincorporated areas of the county. Accordingly, it would appear that the county was not in the first instance authorized to and possessed no home rule power to amend Ch. 19993. See Davis v. Gronemeyer, supra.
Moreover, even assuming that the county possessed the authority to enact an ordinance amending Ch. 19993, such ordinance would have been superseded and repealed by operation of s. 2 of Ch. 73-208, codified as s. 125.01(4), F. S., which states:
 (a) The legislative and governing body of a county shall not have the power to regulate the taking or possession of salt water fish as defined in s. 370.01, F. S., with respect to the method of taking, size, number, season or species; provided, however, that this subsection shall not be construed to prohibit the imposition of excise taxes by county ordinance.
 (b) All county ordinances purporting to regulate in any manner the taking or possession of salt water fish, as defined in s. 370.01, F. S., are hereby repealed. (Emphasis supplied.)
See also s. 370.102, F. S., which provides `[t]he power to regulate the taking or possession of saltwater fish, as defined in s. 370.01, is expressly reserved to the state.'
Applying ss. 125.01(4) and 370.102, F. S., to the instant inquiry, it is evident that insofar as the ordinance in question purports to regulate the taking or possession of saltwater fish it has been superseded and repealed by operation of these statutes. See AGO 075-213. Cf. AGO 074-161 in which this office stated that s. 370.102 prohibits a municipality from enacting legislation purporting to regulate the taking or possession of saltwater fish; and that s. 370.102, F. S., serves to nullify and existing ordinances purporting to regulate the taking or possession of saltwater fish, since such regulatory power is expressly reserved to the state.
As to the status of Ch. 19993, this office has previously concluded that `[s]pecial laws which prohibit or otherwise regulate the manner of taking saltwater fish through the use of nets or seines in county waters have not been superseded or impliedly repealed by general law.' Attorney General Opinion 077-40. Hence, Ch. 19993 continues to remain in effect as originally enacted, notwithstanding the invalidity of the county ordinance which purported to amend the act.
Prepared by: Patricia R. Gleason, Assistant Attorney General